# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| | : | NO. 03-147-01 |
| v. | : | |
| | : | CIVIL ACTION |
| KEENAN PRICE, | : | NO. 08-145 |
| Defendant. | : | |
| | : | |

## Memorandum and Order

YOHN, J.                                             August ____, 2008

Defendant Keenan Price has filed a pro se Motion to Vacate, Set Aside, or Correct

Sentence under 28 U.S.C. § 2255, asserting multiple claims of ineffective assistance of counsel.

For the reasons discussed herein, Price's motion will be denied without an evidentiary hearing.

## I.     Factual and Procedural Background

On March 4, 2003, a grand jury indicted Price on four separate counts:  (1) possession

with intent to distribute more than 50 grams of cocaine base, in violation of 21 U.S.C. §

841(a)(1) & (b)(1)(A); (2) possession with the intent to distribute cocaine, in violation of 21

U.S.C. § 841 (a)(1) & (b)(1)(C); (3) using and carrying firearms during and in relation to drug

trafficking crimes, in violation of 18 U.S.C. § 924(c); and (4) possession of a firearm by a

convicted felon, in violation of 18 U.S.C. § 922(g)(1).  The indictment also served notice of

Price's prior state-court convictions.

A jury trial commenced on August 11, 2003, and six police officers testified at the trial.[1] Officer Frank Bonett conducted the primary surveillance on February 1, 2002, the night Price was arrested, and testified as to what he observed that night. He first observed Price standing in the middle of a parking lot on the 200 block of East Ashmead Street in Philadelphia around 8:35 p.m. A man approached Price on foot, the two engaged in a brief conversation, and the man handed Price United States currency. Price then walked to a white Pontiac Sunbird ("the Sunbird") that was parked in the lot, approached the driver's side door, leaned into the car toward the center console, and retrieved a clear plastic bag. Price removed small objects from the bag, returned the bag to the vehicle, and handed the objects to the man.

About ten minutes later, Officer Bonett observed a female driving a silver Dodge Caravan approach Price in the same parking lot. Price and the female conversed, and the female handed Price United States currency. Price then returned to the Sunbird, retrieved the white plastic bag from the center console area, retrieved small plastic objects from the bag, returned the bag to the vehicle, and handed the objects to the female.

During the second transaction, Officer Bonett observed a station wagon stop in front of the parking lot. A passenger in the station wagon yelled to Price, "Yo, the unmarkeds are in the area." Officer Bonett then observed Price get into the Sunbird, drive to a second parking lot, and park next to the station wagon, which had also relocated to the second parking lot. Officer Bonett next observed Price exit the driver's side of the Sunbird, walk to the trunk, remove a

---

[1] The testimony and evidence presented in this section summarizes the testimony and evidence analyzed in the court's Memorandum and Order denying Price's pro se motion for a judgment of acquittal. *See United States v. Price*, No. 03-0147, 2003 WL 22797948 (E.D. Pa. Nov. 19, 2003).

black handgun from the waistband area of his pants, open the trunk, and place the handgun in the trunk.  Price then closed the trunk and reentered the Sunbird.

Officer Bonett contemporaneously relayed his observations to the other surveillance officers via radio.  Sergeant Anthony Chiarolanza, the officer in charge of the surveillance that evening, decided to terminate the surveillance when Officer Bonett radioed that Price had a handgun.  He ordered the other officers involved, Thomas LaCorte, Anthony Luca, and Eddie Ashburn, to assist with Price's arrest.  Sergeant Chiarolanza testified that as he approached the Sunbird, Price was sitting in the driver's seat and was making furtive movements toward the floor area of the driver's seat.  He observed Price touching a clear bag that contained several clear containers with green lids.  Based on his experience, Sergeant Chiarolanza concluded that these containers held narcotics.[2]  Officer LaCorte similarly testified that when he and Sergeant Chiarolanza approached the Sunbird, Price was sitting in the driver's side of the vehicle and was reaching for something.  The officers subsequently arrested Price at the scene.

Officers Ashburn, Luca, and Richard Cujdik obtained a search warrant for the Sunbird and searched the vehicle at approximately 1:20 a.m. on February 2, 2002.  They testified that they found 68 clear glass jars with green lids and another 47 clear glass jars with green lids containing crack cocaine in the glove compartment.  They also found a black digital scale containing residue under the front passenger seat.  From the trunk they recovered a Desert Eagle 9 mm

---

[2]  During his subsequent search of the vehicle, Sergeant Chiarolanza retrieved several clear glass jars from the floor area of the driver's side.  Price stipulated that these jars contained cocaine base known as crack.

semiautomatic pistol with 14 live rounds of ammunition,[3] a .30 caliber semiautomatic Interarms pistol with six live rounds of ammunition, two pots with crack residue, a box of clear plastic sandwich bags, three packages of unused clear glass jars without lids, three packages of jar lids, and a large amount of cocaine base and cocaine.  Officer LaCorte recovered $637 in United States currency from Price.[4]

On August 13, 2003, a jury found Price guilty of all of the offenses charged in the indictment.[5]  Price filed a pro se motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c) on August 22, 2003, which the court denied.  *See Price*, 2003 WL 22797948.  On November 26, 2003, the court sentenced Price to a total of 300 months of imprisonment, including terms of 240 months of imprisonment on Counts 1 and 2 and 120 months of imprisonment on Count 4, all to be served concurrently, and 60 months of imprisonment on Count 3, to be served consecutively to Counts 1 and 2.  Price was also sentenced to 10 years of supervised release for Counts 1, 2, and 4, to be served concurrently.  The

---

[3] Officers Cujdik and Luca testified that they found the Desert Eagle 9 millimeter in the front of the trunk.  Their testimonies corroborated Officer Bonett's testimony regarding where Price had placed the handgun he removed from his waistband area.

[4] The parties stipulated that if called to testify, Johnson Varghese of the Philadelphia Police Department Chemistry Laboratory would testify that he weighed and tested all the exhibits containing narcotics and that these contained 326 grams of cocaine base ("crack") and 112 grams of cocaine and that the residue on the pots and scale was a type of cocaine base known as crack. The parties also stipulated that the handguns recovered from the trunk were firearms as defined by 18 U.S.C. § 921(a)(3).

[5] The trial actually proceeded in two phases.  The government presented its evidence on the first three courts of the indictment, and then the jury deliberated on those three counts, finding Price guilty beyond a reasonable doubt of all three counts on August 13.  Then the government presented its evidence on the fourth count, after which the jury deliberated and found Price guilty beyond a reasonable doubt on the fourth count.

court also imposed a $400 special assessment and a $1000 fine.

Price filed a pro se Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 on October 18, 2004, asserting that his trial counsel was ineffective for failing to file an appeal as requested. The court held an evidentiary hearing on this issue on June 3, 2005 and granted Price leave to file an appeal *nunc pro tunc* within ten days. Price then timely filed an appeal with the Third Circuit. The Third Circuit affirmed Price's convictions and sentences. *See United States v. Price*, 458 F.3d 202 (2006). The United States Supreme Court denied Price's petition for a writ of certiorari on January 8, 2007.

Price filed the current pro se motion on January 8, 2008.[6] He asserts that his trial counsel was ineffective for failing to challenge alleged prosecutorial misconduct during the grand jury proceedings, his trial counsel and appellate counsel were ineffective for failing to challenge the loss or destruction of exculpatory evidence, his trial counsel and appellate counsel were ineffective for failing to argue that the trial court erred by not instructing the jury of the limited significance of Price's prior conviction, and his trial counsel was ineffective for failing to challenge Price's sentence on the ground that the 100-to-1 ratio for crack cocaine versus powder cocaine sentences is discriminatory and fundamentally unfair. This motion will be denied without an evidentiary hearing for the reasons discussed below.

## II.    Legal Standard

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct his sentence if "the sentence was imposed in violation of the Constitution or

---

[6] Price signed the petition on January 3, 2008. Because Price is proceeding pro se, his pleadings will be construed liberally. *See Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003).

laws of the United States, . . . the court was without jurisdiction to impose [the] sentence, . . . the sentence was in excess of the maximum authorized by law, or [the sentence] is otherwise subject to collateral attack." 28 U.S.C. § 2255.  To establish constitutionally ineffective assistance of counsel, a defendant must show that (1) his attorney's performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To prove deficiency, a defendant must show that counsel's performance "fell below an objective standard of reasonableness under prevailing professional norms." *Buehl v. Vaughn*, 166 F.3d 163, 169 (3d Cir. 1999) (citing *Strickland*, 466 U.S. at 688).  To prove prejudice, a defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.  "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding," *id.* at 693; rather, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.  Reasonable probability means "a  probability 'sufficient to undermine confidence in the outcome.'" *Rolan v. Vaughn*, 445 F.3d 671, 683 (3d Cir. 2006) (quoting *Hull v. Kyler*, 190 F.3d 88, 110 (3d Cir. 1999)).

The Supreme Court has explained that "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689.  A "court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.  There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and the defendant has the burden of overcoming "the presumption that, under the

circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  While a defendant has the right to effective assistance of counsel, courts have explained that the Constitution does not guarantee the right to a perfect trial.  *See Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002) (stating that "the court is not engaging in a prophylactic exercise to guarantee each defendant a perfect trial with optimally proficient counsel, but rather to guarantee each defendant a fair trial, with constitutionally competent counsel").

When a prisoner files a § 2255 motion, the district court may dismiss the motion without an evidentiary hearing if "the motion and files and records of the case show conclusively that the movant is not entitled to relief."  *Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989) (citation omitted).  In making this determination, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record."  *Id.*  If a claim for ineffective assistance of counsel

> clearly fails to demonstrate either deficiency of counsel's performance or prejudice to the defendant, then the claim does not merit a hearing.  If, on the other hand, a claim, when taken as true and evaluated in light of the existing record, states a colorable claim for relief under *Strickland*, then further factual development in the form of a hearing is required.  That is, if a nonfrivolous claim does not *conclusively* fail either prong of the Strickland test, then a hearing must be held.

*United States v. Dawson*, 857 F.2d 923, 928 (3d Cir. 1988).

## III.   Discussion

### A.   Counsel was not ineffective for failing to challenge prosecutorial misconduct that allegedly occurred during the grand jury proceedings.

Price asserts that his trial counsel was constitutionally ineffective for failing to challenge Special Agent Michael Laravia's allegedly perjurious grand jury testimony and for failing to

7

challenge prosecutorial misconduct that allegedly occurred when Assistant United States
Attorney Tina Gabbrielli solicited Special Agent Laravia to perjure himself before the grand
jury.[7]  Price contends that the purpose of the perjured testimony was to (1) deceive the grand jury
into believing that no one, other than the police, witnessed the events that led to his arrest; (2)
mislead the grand jury into thinking that Price was the only possible owner of the vehicle or the
contents found inside it; and (3) cover up the failure to present any of the drugs that resulted from
the sales Officer Bonett observed taking place before the officers arrested Price.

Price first argues that Special Agent Laravia attempted to mislead the jury into believing
that only police officers witnesses Price's arrest.  During Special Agent Laravia's grand jury
testimony, a grand juror asked Special Agent Laravia if there were any witnesses other than
police officers, and Special Agent Laravia answered that there were not.  Price argues that
Special Agent Laravia's testimony was directly contradicted by the evidence presented at trial
that the police officers arrested another individual who was speaking with Price at the time of his
arrest and detained a third individual who was also present at the scene.[8]  The record, however,
does not show that Special Agent Laravia perjured himself when answering this question.  The
record does not show the context in which this question took place, so it is not clear that the
grand juror and Special Agent Laravia were discussing whether there were witnesses to Price's

---

[7] Special Agent Laravia did not testify at Price's trial.

[8] Price contends that his fiancee was across the street and witnessed the arrest and that
there are two other witness who were directly across the street at a store and could testify to the
events.  Notably, however, Price does not provide the identities or statements of the two
eyewitnesses who were allegedly directly across the street or provide any information as to what
the contents of their statements would be.  Rather, he merely says that they will be identified later
and their sworn statements will be provided later.  These vague assertions of witnesses do not
suffice.  Furthermore, they were not called by Price to testify at trial.

arrest or to another event.  Even if they were discussing the arrest, however, there is no evidence that this was a "deliberate misrepresentation" of the truth, as Price asserts it was.  Furthermore, it is not relevant to the grand jury whether there were other witnesses to Price's arrest.  The grand jurors only had to determine if the government's evidence showed that there was probable cause to indict Price, and the presence or absence of witnesses is immaterial to that analysis.

Price also contends that Special Agent Laravia committed perjury when Gabbrielli asked "And you testified just now that taken from this individual's vehicle was approximately 326 grams of cocaine base that is crack, is that correct?" and Special Agent Laravia responded "That is correct."  Price asserts this was perjured testimony because the police officers testified at his trial that they had evidence that Price did not own the Sunbird.  Contrary to Price's assertions, referring to the vehicle that three officers saw Price in control of as Price's vehicle is not a deliberate misrepresentation of the truth designed to deceive the grand jury.  Moreover, the focus of the question was whether 326 grams of cocaine base was recovered from the vehicle, not whether Price owned the vehicle.  Special Agent Laravia correctly testified that the police officers recovered 326 grams of cocaine base from the vehicle.

Finally, Price asserts that Special Agent Laravia committed perjury when Gabbrielli asked "And how about . . . the two individuals that you described, a female and male that [Price] handed objects to and received money from, were either of those two individuals able to be apprehended by the police officers?" and Special Agent Laravia responded, "No, Ma'am, they were not."  Price argues that this testimony was perjurious because Officer Bonett testified at trial that he directed the other officers not to apprehend those two individuals and this refutes the grand jury testimony that the officers were not *able* to apprehend the buyers.

The trial testimony demonstrates that Special Agent Laravia did not falsely testify that the officers were not able to apprehend the two buyers.  Officer Bonett explained at trial that he did not have officers apprehend the male because the male entered an apartment building and would have been difficult to locate without causing a disturbance.  (Trial Tr. 35:3-7, Aug. 11, 2003.) He also explained that he did not request the backup officers to apprehend the female because Price was moving the Sunbird at that same time the female was leaving the area.  (*Id.* at 38:24-39:4.)  Sergeant Chiarolanza explained that he chose not to pursue the male because of the location of the apartment building and that he chose not to pursue the female because she was leaving the area at the same time Price was moving the Sunbird.  (Trial Tr. 14:7-11, 16:5-12, Aug. 12, 2003.)  These testimonies corroborate Special Agent Laravia's grand jury testimony that the officers were not able to apprehend the two buyers.  Special Agent Laravia was not required to give a detailed explanation to the grand jury that the location of the apartment building the male entered and the circumstances in which the female left the scene led the officers to decide that it would be better to focus on apprehending Price.[9]  Special Agent Laravia's short answer was not misleading and was not untruthful.  In sum, the record of the testimony presented at trial shows that contrary to Price's assertions, Special Agent Laravia did not commit perjury in front of the grand jury.[10]

---

[9]  It is important to note that Price was indicted for *intent* to distribute, not actually distributing or selling, controlled substances.  Any testimony that may have led the grand jury to believe the officers earnestly attempted to locate the individuals to whom Price sold drugs but were not able to locate them was not prejudicial to Price because the officers did not have to provide the controlled substances that Price sold on the day he was arrested.

[10]  Furthermore, even if Special Agent Laravia's testimony may have excluded some of the details, a minor error such as this in grand jury proceedings is rendered harmless after a petit jury has found a defendant guilty beyond a reasonable doubt.  *See United States v. Mechanik*, 475

Additionally, nothing from the grand jury transcript provided by Price, and nothing from the record before the court, demonstrates that the prosecutor knowingly, deliberately, or even unintentionally sought perjured testimony; knew Special Agent Laravia provided false testimony; or sought to mislead the grand jury.  Price's speculative accusations that the prosecutor solicited or suborned perjured testimony are not enough for Price to prove that his trial counsel's performance was deficient for failing to allege prosecutorial misconduct during the grand jury proceedings.  *See Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3d Cir. 1984) (concluding that "bald assertions and conclusory allegations" are not enough to require an evidentiary hearing in a habeas motion); *Dawson*, 857 F.2d at 931 (noting that "speculation standing alone is insufficient to challenge the conviction").

In conclusion, the record shows that there was no perjured testimony and that there was no prosecutorial misconduct before the grand jury.  Thus, trial counsel would not have had any basis to challenge Special Agent Laravia's grand jury testimony or the prosecutor's conduct during the grand jury proceedings.  Trial counsel did not fall below an objective standard of reasonableness under prevailing professional norms when he declined to put forth an argument that was refuted by the record.  The record shows conclusively that Price failed to demonstrate deficient performance, and this claim will be denied without a hearing.

---

U.S. 66, 69-73 (1986); *United States v. Perez*, 246 F. App'x 140, 144-45 (3d Cir. 2007); *United States v. Console*, 13 F.3d 641, 671-72 (3d Cir. 1993).

**B.**   **Counsel was not ineffective in failing to challenge Price's conviction on the ground that the loss or destruction of exculpatory evidence deprived him of a fair trial.**

Price next argues that both his trial counsel and his appellate counsel were ineffective for failing to challenge the loss or destruction of the Sunbird.  Price contends that the vehicle was exculpatory evidence because a fingerprint analysis of the steering wheel and center console area would have demonstrated that Price did not constructively possess the vehicle.  He further contends that the vehicle "mysteriously disappeared" prior to trial and that this disappearance can only be explained as the police officers' attempt to (1) cover up the fact that the trunk was broken into, and (2) prevent a fingerprint analysis of the vehicle.  In his traverse to the government's response, Price includes an affidavit asserting that he advised his trial counsel that a fingerprint analysis of the vehicle and its contents was necessary in order to prove that the police set him up and that he was never inside the vehicle and never touched the contents of the vehicle.  Price also asserts that he asked his trial counsel to investigate the arrest scene and secure the testimonies of witnesses who observed the police officers breaking into the trunk of the Sunbird.[11]

Based on Price's motion and his affidavit, it appears that Price is asserting multiple claims regarding the vehicle:  (1) trial counsel was ineffective for failing to get a fingerprint testing and analysis of the vehicle and appellate counsel was ineffective for failing to raise this

---

[11] Price does not provide the identities of these alleged witnesses, explain what these witnesses would have testified to, or explain how he became aware of the alleged fact that some police officers broke into the trunk of the vehicle.  He only includes a general assertion that there were witnesses and asserts that at some time and in some unspecified location, they observed unnamed police officers breaking into the trunk of the Sunbird.  Nothing in the record supports the assertion that the trunk was broken into.  Price's speculative and conclusory allegations that the trunk was broken into and that there were witnesses, without more, are not enough to grant an evidentiary hearing, let alone to grant Price's § 2255 motion.  *See Zettlemoyer*, 923 F.2d at 301; *Dawson*, 857 F.2d at 931.

issue on appeal, and (2) trial counsel was ineffective for failing to challenge the loss of the

Sunbird and appellate counsel was ineffective for failing to raise this issue on appeal.  As

discussed below, the record establishes that even if counsel were deficient as to either of these

claims, the deficiency would not have prejudiced Price's defense.[12]

The government concedes that the police officers were not aware of the Sunbird's

location following Price's arrest,[13] but it contends that this does not entitle Price to relief because

the real issue is whether trial counsel was ineffective for failing to get a fingerprint analysis.  The

court agrees with the government that Price was not prejudiced by a failure to get a fingerprint

testing and analysis of the vehicle because of the overwhelming evidence regarding Price's

presence in the vehicle.  Officer Bonett testified that he saw Price driving the vehicle, and

---

[12] Under *Strickland*, the court can analyze either the deficiency prong or the prejudice prong when deciding an ineffective assistance of counsel claim.  *See* 466 U.S. at 697 (noting "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one"; "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies").  Because there was no prejudice here, the second *Strickland* prong will be analyzed without making a determination as to whether trial counsel's or appellate counsel's performances were deficient.

[13] At trial, Officer Bonett testified that the vehicle was still in the auto impoundment lot. (Trial Tr. 7:21-25, Aug. 12, 2003.)  Sergeant Chiarolanza testified that after Price's arrest, he instructed Officer LaCorte to secure the vehicle and transport it to the Fourteenth Police District to be secured while the police waited for a search and seizure warrant.  (*Id.* at 24:23-25:3.)  He also testified that the keys were in the vehicle and that he had the vehicle secured by a uniformed officer when the vehicle arrived at the police station.  (*Id.* at 24:4-5, 26:4-12.)  Officer LaCorte testified that at Sergeant Chiarolanza's direction, he drove the vehicle to the Fourteenth District lot and secured it so it could be searched after a search warrant had been issued.  (*Id.* at 44:20-45:4.)  Officer LaCorte stated that the vehicle's keys were in the ignition when he got into the vehicle to drive it to the station.  (*Id.* at 45:5-7.)  He further testified that after the vehicle was searched, it was taken to the "auto pound," where he believes it was sold at an auction.  (*Id.* at 45:18-25.)

Sergeant Chiarolanza and Officer LaCorte testified that they observed Price sitting in the driver's side of the vehicle.  Officer Bonett also testified that he saw Price put a black semiautomatic handgun in the front of the trunk, and Officers Cujdik's and Luca's testimonies that they found a black semiautomatic handgun in the front of the trunk corroborated this testimony.  Additionally, Sergeant Chiarolanza testified that he observed Price holding a small plastic bag near the bottom of the driver's seat; that bag held containers that Price stipulated contained cocaine base.  Thus, there was substantial evidence of Price's presence in the vehicle and of Price's possession of narcotics.  Price has submitted no evidence that he was not in the vehicle.  Even if a fingerprint analysis would have revealed Price's fingerprints were not on the steering wheel or in the center console area for whatever reason,[14] a jury still would not have had a reasonable doubt as to Price's guilt because of all the evidence recounted above.  Therefore, there is not a reasonable probability that a fingerprint analysis would have changed the outcome of Price's trial or his appeal.  Accordingly, Price has not shown that any deficiency in failing to get a fingerprint analysis prejudiced his defense.

The failure to challenge the loss of the vehicle also was not prejudicial to Price because there was no violation of his constitutional rights.  For the loss or destruction of evidence to be constitutionally material, the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."  *California v. Trombetta*, 467

---

[14] There are many reasons why police officers do not attempt a fingerprint analysis:  (1) it is often unsuccessful on particular surfaces; (2) many others touch the evidence before and after the defendant; and (3) it is too expensive to obtain a fingerprint analysis in all cases, so police officers do not conduct an analysis when there are multiple witnesses.

U.S. 479, 489 (1984).  Additionally, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."  *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).  Relying on *Youngblood*, the Third Circuit has specifically required that a "defendant who claims destroyed evidence might have proved exculpatory if it could have been subjected to tests has to show the prosecution's bad faith in ordering or permitting its destruction.  Without a showing of bad faith, failure to preserve evidence that might be of use to a criminal defendant after testing is not a denial of due process."  *United States v. Deaner*, 1 F.3d 192, 200 (3d Cir. 1993).

Price contends that he is alleging the police officers acted in bad faith, but his only allegations are that the vehicle "mysteriously disappeared" from the police department's impoundment lot.  Price provides nothing to support this assertion.  Furthermore, Price's speculation that the police officers were trying to cover up their fabrication of the events and the physical evidence recovered from the vehicle is mere conjecture.  Price's speculative theory is not sufficient to show bad faith.  Accordingly, there was no basis for counsel to argue that there was bad faith in the failure to preserve the vehicle, and because there was no basis for a finding of bad faith, there would not have been a finding of a constitutional error and Price would not have been entitled to relief.  Because there was no prejudice, Price's claim will be denied.  Furthermore, because the record conclusively establishes that Price has not met the second prong of *Strickland*, it will be denied without an evidentiary hearing.[15]

---

[15] The cases relied on by Price, *United States v. Augenblick*, 393 U.S. 348 (1969); *Virgin Islands v. Testamark*, 570 F.2d 1162 (3d Cir. 1978); and *United States v. Bryant*, 439 F.2d 642, 647 (D.C. Cir. 1971) do not require the court to vacate his conviction and sentence or to order a new trial because they all conclude that these remedies *may* be a requirement for the loss, destruction, or nonpreservation of evidence only under certain circumstances, most notably

**C.    Counsel was not ineffective for failing to argue that the trial court erred in failing to instruct the jury on the limited significance of Price's prior conviction.**

Price also contends that he suffered from a constitutional error when the jury saw the indictment, which contained a notice of his prior felony conviction, during their deliberations. He claims that his trial and appellate counsel were ineffective for failing to argue that the trial court erred by not issuing a limiting instruction with respect to his prior conviction. The record does not support Price's argument. The procedure followed in this court is that jurors do not see the indictment unless there is a special request to see it. The trial record shows that there was no such request in this case; thus, the jury did not see the indictment.[16]

Because the jury did not see the indictment, there was no basis for trial counsel or appellate counsel to argue there was an error when the jury saw the indictment. Neither trial counsel nor appellate counsel fell below an objective standard of reasonableness under prevailing professional norms by declining to argue a theory that is clearly refuted by the record.[17] The

_____

where there is bad faith; the cases do not establish that a defendant is always entitled to have his sentence vacated or to a new trial when evidence has been lost, destroyed, or not preserved. As discussed above, the circumstances here demonstrate that Price is not entitled to relief.

[16] The trial court judge can appropriately draw on his own personal knowledge and recollection of the trial when considering the factual allegations of a § 2255 motion that relate to events that occurred in the judge's presence. *See Virgin Islands v. Nichols*, 759 F.2d 1073, 1077 (3d Cir. 1985). Thus, my independent recollection that the jury was not given the indictment suffices. Moreover, the trial record shows that the jury only viewed (1) the verdict form, which had been prepared by the court and approved by the attorneys; and (2) the exhibits that the attorneys selected to give to the jury. (Trial Tr. 83:1-5, 105:17-106:16, Aug. 13, 2003.)

[17] As the government notes, Price's reliance on *Ferguson v. Knight*, 797 F.2d 289 (6th Cir. 1986) is misplaced because its holding, that the court's failure to provide an unrequested limiting instruction regarding the defendant's prior convictions was a constitutional error, was vacated by an en banc panel after a rehearing of that case, *Ferguson v. Knight*, 809 F.2d 1239 (6th Cir. 1987) (per curiam). Furthermore, it is not factually relevant here because the jury in

16

record demonstrates that Price's claim regarding the failure to challenge the absence of a limiting

instruction is without merit, and this claim will be denied without an evidentiary hearing.

**D.      Trial counsel was not ineffective in failing to challenge Price's sentence.**

Finally, Price argues that his trial counsel was ineffective for failing to argue that the 100-

to-1 disparity between powder cocaine and crack cocaine sentences is discriminatory and unfair.

He contends that the Supreme Court's decision in *Kimbrough v. United States*, 128 S. Ct. 558

(2007), which concluded that judges have the discretion to consider this disparity during

sentencing, compels the conclusion that he was prejudiced by his trial counsel's failure to raise

the type of claim raised in *Kimbrough*.   Price concedes, however, that there is a general principle

that attorneys are not required to predict future Supreme Court decisions.[18]

When determining whether Price's trial counsel was ineffective, the court is to view

counsel's conduct "as of the time of counsel's conduct."  *See Strickland*, 466 U.S. at 690.  Price

---

Price's trial did not receive evidence of Price's prior conviction until after the jury convicted
Price on the first three counts of the indictment and the government proceeded with its case on
the fourth count against Price.  After the jury heard evidence of Price's prior conviction, the court
provided a limiting instruction regarding Price's prior conviction.  (*See* Trial Tr. 141:11-22, Aug.
13, 2003.)  Finally, even if the case were factually relevant and still good law, the case would be
persuasive authority, not controlling authority that this court must follow, because it is from the
Sixth Circuit, not the Third Circuit.

[18] Contrary to Price's arguments, *Nichols v. United States*, 501 F.3d 542 (6th Cir. 2007),
does not compel an outcome in Price's favor.  First, the Sixth Circuit vacated its opinion in
*Nichols* on January 3, 2008 and an en banc rehearing is pending, so the decision is no longer
good law.  Second, even if *Nichols* were still good law, it would not be applicable here because
*Nichols* focused on the use of judge-found, rather than jury-found, facts to apply sentencing
enhancements—the district court judge in *Nichols* enhanced the defendant's Sentencing
Guidelines range based on his own determinations regarding the victim's vulnerability and the
use of a child in the course of the offense.  In Price's case, all of the facts applied at his
sentencing were either found by the jury or stipulated to by him.  Third, even if *Nichols* were still
good law and were factually applicable, it is at best persuasive authority, and not controlling
authority, because it is from the Sixth Circuit, not the Third Circuit.

was sentenced on November 26, 2003, over one year before the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005), which rendered the United States Sentencing Guidelines advisory, rather than mandatory; over two years before the Third Circuit decided *United States v. Gunter*, 462 F.3d 237 (3d Cir. 2006), where it held, as a matter of first impression, "that district courts may consider the crack/powder cocaine differential in the Guidelines as a factor, but not a mandate, in the post-*Booker* sentencing process"; and over three years before the Supreme Court decided *Kimbrough*. Thus, not only were the Guidelines still considered mandatory at the time Price was sentenced, there was the widely held view that district courts did not have discretion to consider the 100-to-1 disparity when imposing sentence. Price's trial counsel was not deficient by declining to argue a point that was contrary to then-controlling law. Furthermore, the Third Circuit has repeatedly determined that trial counsel is not ineffective for failing to anticipate a later change in the law. *See, e.g.*, *United States v. Davies*, 394 F.3d 182, 189-91 (3d Cir. 2005) (concluding that the defendant's attorney was not constitutionally ineffective for failing to predict a change in the law that was favorable to defendant's position); *Duncan v. Morton*, 256 F.3d 189, 202-03 (3d Cir. 2001) (holding that the defendant's attorney's failure to object to a jury instruction was not ineffective under *Strickland* because the case that led to the conclusion that the instruction was defective was not decided until *after* the defendant's trial, even though prior state supreme court decisions hinted that the instruction might be defective). Therefore, Price's trial counsel was not ineffective for failing to anticipate a change in the controlling law.

Because the arguments Price asserts his trial counsel should have made were not recognized as valid legal arguments at the time he wanted them made, Price's trial counsel was not deficient in his performance. Price's claim conclusively fails the first prong of *Strickland*,

and it will be denied without an evidentiary hearing.

### E.   Price is not entitled to discovery of the police officers' internal records.

In a letter to the court, Price requested all of the Philadelphia Police Department's internal records for the officers who testified against him.  Price asks for these records in order to determine whether there have been previous allegations that they fabricated evidence or perjured themselves while testifying against defendants.  Price asserts that because there have been newspaper reports of misconduct involving some officers of the Philadelphia Police Department, the officers who testified against him have probably fabricated or tampered with evidence.  Price concludes that it is likely that there has been a complaint or investigation against these officers.

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  Under Rule 6(a) of the Rules Governing § 2255 Cases, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law."  More than bald accusations and conclusory allegations are necessary in order for there to be good cause sufficient to justify discovery; the movant must have specific allegations and cannot request a fishing expedition.  *See Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000) (stating that "a petitioner's factual allegations must be specific, as opposed to merely speculative or conclusory, to justify discovery under Rule 6 . . . . Rule 6 does not authorize fishing expeditions); *Zettlemoyer*, 923 F.2d at 301 (concluding that "bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the [government] to respond to discovery").  Here, Price has only made speculative allegations that some of the officers who testified at his trial may have at one time been involved in internal

19

investigations because other officers within the police department have at other times been the subject of internal investigations. These assertions do not show good cause, and Price's request amounts to a fishing expedition. Price is not entitled to discovery on this matter, and his informal request for discovery will not be granted.

## IV. Conclusion

For the reasons explained above, the court will deny Price's motion under 28 U.S.C. § 2255 without an evidentiary hearing. Thus, the court must determine if a certificate of appealability should issue. A court may issue a certificate of appealability only if the defendant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires that the defendant "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, the court has determined that on the basis of the record before the court, Price's ineffective assistance of counsel claims are without merit. The court is persuaded that reasonable jurists would not find this assessment debatable or wrong. Therefore, Price has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not issue.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| | : | NO. 03-147-01 |
| v. | : | |
| | : | |
| | : | CIVIL ACTION |
| KEENAN PRICE, | : | NO. 08-145 |
| Defendant. | : | |
| | : | |

## Order

And now, this _____ day of August 2008, upon careful consideration of defendant Keenan Price's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. No. 86), the government's response, the defendant's traverse to the government's response, and the government's response to the defendant's traverse, IT IS HEREBY ORDERED that:

1.      The defendant's motion is DENIED.

2.      The defendant having failed to make a substantial showing of the denial of a constitutional right, there is no ground to issue a certificate of appealability.

3.      The Clerk shall mark this case CLOSED for statistical purposes.

        s/William H. Yohn Jr.
        William H. Yohn Jr., Judge